Gloria Bardo, Petitioner v. Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Kentucky Fried Chicken, Inc., Respondents.

Argued September 18, 1981, before Judges ROGERS, WILLIAMS, JR. and PALLADINO, sitting as a panel of three.

*Howard L. Rubenfield,* for petitioner.

*William R. Brown, MacDonald, Illig, Jones & Britton,* for respondent, Kentucky Fried Chicken, Inc.

OPINION BY JUDGE WILLIAMS, JR., November 19, 1981:

This is an appeal from an order of the Workmen's Compensation Appeal Board (Board). The Board's order affirmed a referee's decision granting a petition to terminate disability benefits to Gloria Bardo (claimant).

On April 26, 1977 claimant pulled a tendon in her right wrist in the course of her employment with Kentucky Fried Chicken, Inc. Thereafter, she received total disability benefits under The Pennsylvania Workmen's Compensation Act.[1] On October 6, 1978 the employer and its insurer filed a petition to terminate wherein it was alleged that claimant's disability had ceased and that she was able to return to work.

At a hearing held before the referee, the employer presented the testimony of Dr. Karl F. Frankovitch, an orthopedic surgeon. Dr. Frankovitch had examined claimant on three (3) occasions, the last of these being October 2, 1978. He had diagnosed claimant's condition as DeQuervains disease. Surgery to correct this condition had been performed on June 2, 1977. Based upon the examination of October 2, 1978, Dr. Frankovitch concluded that there was no objective evidence of any disability. It was his opinion that claimant's disability had ceased and that she was able to return to work as of October 3, 1978.

---

[3] The Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §1 *et seq.*

In rebuttal, claimant offered the testimony of Dr. Samuel Sherman, a specialist in rehabilitation medicine. Dr. Sherman had examined claimant on May 1, 1979. It was his opinion that claimant was suffering from chronic tendonitis of the right wrist and that she could not return to her work.

Based upon the foregoing testimony, the referee concluded that claimant's disability had ceased and terminated as of October 3, 1978. Accordingly, the petition to terminate claimant's benefits was granted. After affirmance of the referee's decision by the Board, claimant's appeal to this court followed.

The claimant urges that the referee's finding is not supported by substantial evidence.[2] Specifically, she asserts that Dr. Frankovitch's testimony is so equivocal that it cannot support the conclusion that claimant's disability had ceased as of October 3, 1978. She directs our attention to certain portions of Dr. Frankovitch's testimony in an effort to have us conclude that it was reversible error for the referee to have adopted the opinion stated by the doctor on direct examination.[3]

---

[2] In proceedings to terminate compensation benefits the employer has the burden of proving that the claimant's disability has ceased or is no longer the result of the injury sustained in the course of employment. *Children's Aid & Family Services v. Workmen's Compensation Appeal Board*, 53 Pa. Commonwealth Ct. 379, 417 A.2d 1297 (1980). Where the party with the burden of proof has prevailed before the referee and the Board has taken no additional evidence, as in the instant case, this court's scope of review is limited to determining whether constitutional rights were violated, an error of law committed, or whether any finding of fact necessary to support the adjudication is not supported by substantial evidence. *Cox v. Workmen's Compensation Appeal Board* 60 Pa. Commonwealth Ct. 59, 430 A.2d 1009 (1981).

[3] These portions of the testimony are as follows:

Q. Did you, however, yes or no, form an opinion as to whether or not Gloria Bardo continued to have any disability or any existing injury?

It is well-established that in workmen's compensation cases medical opinion testimony must be unequivocal and not based on mere possibilities. Nonetheless, there is no requirement that all of the underlying medical evidence point consistently and unerringly toward the conclusion reached by the witness or that it be the only conclusion possible. *Romanski v. Workmen's Compensation Appeal Board,* 33 Pa. Commonwealth Ct. 273, 381 A.2d 508 (1978).

Read in its entirety, Dr. Frankovitch's testimony concerning the cessation of claimant's disability was patently unequivocal. The doctor stated on direct examination that he found no objective evidence of any

A. At that time, I felt that the disability that she had, considering all of the information I had, must have been related to her injury, but certainly following the natural history of any type of DeQuervain's, sixteen to eighteen months of convalescing, her disability is far within the natural history of this disease and now should be resolved, and any residual disability, I would have said, was not directly related to her injury and possibly aggravated by a preexisting condition or a metabolic collagen or some other systemic disease. That was my opinion. . . .

Q. Would there be any other medical explanation for her symptomatology ; in other words, the pain, the numbness, the inability to dorsiflex.

A. I have no explanation other than if she had some systemic disease such as a collagen disease, which would be like rheumatoid arthritis or something like that that has not been diagnosed despite the extensive work-up. . . .

Q. When you testified as to her ability to go back to work, you're assuming that her subjective complaints about extensive pain and inability to grasp things are psychological in nature or nonexistent, is that correct?

A. No, I'm saying that as far as an injury such as DeQuervain's, with the natural history of all the thousands of DeQuervain's that have been diagnosed and treated in the past, she should be able to return to work, or if that indeed was her disease and that indeed was what she was treated for.

disability during his examination of claimant on October 2, 1978. He further testified that, based on the aforesaid examination, it was his opinion that claimant was able to return to work as of October 3, 1978.[4] Moreover, many of the statements made by Dr. Frankovitch on cross-examination were given in response to hypothetical questions.[5] We do not read such testi-

---

[4] The pertinent portions of the direct examination are the following:

Q. Did you find that her hand had recovered? I mean, in other words, could she use it? Could she pick up things with her right hand? Can she flex it? Could she lift up boxes or could she use a broom?

A. At that time I found no objective evidence of any disability. . . .

Q. And based on the examination that you completed on October 2nd, 1978, did you find that she was able to return to work on the 3rd of October?

A. It was my opinion she was.

Q. Do you know of anything physically that would prevent her from using her right hand to not only engage in normal day-to-day activities, but to lift things, lift boxes, wait on people at a counter, or to lift twenty-five or thirty-pound boxes of french fries? Is there anything about her right wrist that would prevent that?

A. Not in my opinion.

[5] The following is an example of such testimony:

Q. Do you believe there is something present there?

A. It's possible

Q. It is also possible that all these doctors that saw her before you might not have been able to isolate it with their thorough workups?

A. It's possible.

Q. Would you venture to say what other possibilities might exist for this condition?

A. I can only say that the one condition that would not exist would be that it's a posttraumatic condition of this duration.

Q. But you rule out any disease element?

A. Oh, I could not rule out, no, because collagen diseases are notorious—or metabolic diseases are notorious for their difficulty in diagnosis.

mony as a retreat from the positiveness of the opinion expressed by the witness on direct examination. It rather demonstrates the doctor's recognition that other reasonable medical opinions based on the same patient history were possible. The existence of such other possibilities merely affected the weight to be accorded his opinion, and it was within the referee's province as fact-finder to accept the testimony of Dr. Frankovitch and reject that of claimant's physician, Dr. Sherman. *Lo Rubbio v. Workmen's Compensation Appeal Board*, 49 Pa. Commonwealth Ct. 529, 411 A.2d 866 (1980). *See also, Sears, Roebuck & Co. v. Workmen's Compensation Appeal Board*, 48 Pa. Commonwealth Ct. 161, 409 A.2d 486 (1979).

For the reasons set forth above, we affirm the order of the Board.

ORDER

AND Now, the 19th day of November, 1981, the order of the Workmen's Compensation Appeal Board dated December 4, 1980, is affirmed.

___

Q. Doctor, could this have been a metabolic disease condition that was coming on that was aggravated by the traumatic injury and then has failed to go away because it was a disease?

A. It's possible.